# GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (this "Guaranty Agreement"), dated as of March 22, 2004, is made by THE UNDERSIGNED (the "Guarantor") to INTERCEPT, INC., a Georgia corporation (the "Secured Party").

### Background:

A.   Pursuant to that certain Member Interest Purchase Agreement (the "Purchase Agreement"), dated as of the date hereof by and among Media Billing, L.L.C., a New York limited liability company (the "Borrower"), InterCept, Inc., a Georgia corporation (the "Secured Party"), and Internet Billing Company, LLC, a Georgia limited liability company, the Borrower executed and delivered to the Secured Party that certain Promissory Note dated the date hereof in the original principal face amount of $750,000.00 (the "Note"). In addition, in the Purchase Agreement the Borrower agreed either to obtain the release by April 20, 2004 of a $3,000,000 letter of credit pledged by the Secured Party or to pay that sum to the Secured Party on or before April 22, 2004 if no draws have been made before that date (and to pay to the Secured Party the amount of any draw within two business days). All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Purchase Agreement.

B.   The Guarantor is, directly or indirectly, a holder of member interests of the Borrower and will materially benefit from the financing evidenced by the Note.

C.   The Guarantor is required to enter into this Guaranty Agreement pursuant to the terms of the Purchase Agreement.

D.   The execution and delivery of this Guaranty Agreement is a material part of the consideration given in connection with, and as an inducement to the execution and delivery of, the Purchase Agreement by the Secured Party, and the Secured Party is unwilling to enter into the Purchase Agreement unless the Guarantor enters into this Guaranty Agreement.

NOW, THEREFORE, in consideration of the premises and mutual covenants contained herein, the parties hereto agree as follows:

1.   **Guaranty**. The Guarantor hereby unconditionally, absolutely, continually, and irrevocably guarantees to the Secured Party the payment and performance in full of the Borrower's Liabilities (as defined below). For all purposes of this Guaranty Agreement, "Borrower's Liabilities" means the Borrower's prompt payment in full, when due in accordance with the terms of the Note or declared due and at all such times, of all obligations and all other amounts, heretofore, now or at any time or times hereafter owing, arising, due or payable from the Borrower to the Secured Party pursuant to the terms of (a) the Note, including principal, interest, and expenses (including, but not limited to, reasonable attorneys' fees); and (b) the obligations of the Borrower in Section 9.13 of the Purchase Agreement. The Guarantor's obligations to the Secured Party under this Guaranty Agreement are hereinafter referred to as the "Guarantor's Obligations." Notwithstanding the foregoing, the liability of the Guarantor with respect to the Guarantor's Obligations shall be limited to an aggregate amount equal to the largest amount that would not render his obligations hereunder subject to avoidance under Section 548 of the United States Bankruptcy Code or any comparable provisions of any applicable state law. The Guarantor agrees that he is directly, and primarily liable (subject to the limitation in the immediately preceding sentence) for the Borrower's Liabilities.

2.   **Payment.**   If the Borrower shall default in payment or performance of any of the Borrower's Liabilities, when and as the same shall become due, then the Guarantor will, upon demand thereof by the Secured Party, fully pay to the Secured Party, subject to any restriction on the Guarantor's Obligations set forth in Section 1 hereof, an amount equal to all the Borrower's Liabilities then due and owing.

3.   **Absolute Rights and Obligations.**   This is a guaranty of payment and not of collection. The Guarantor's Obligations under this Guaranty Agreement shall be absolute, and unconditional irrespective of, and the Guarantor hereby expressly waives, to the extent permitted by law, any defense to his obligations under this Guaranty Agreement by reason of:

(a)   any lack of legality, validity, or enforceability of the Purchase Agreement, of the Note, or of any other agreement or instrument creating, providing security for, or otherwise relating to the Guarantor's Obligations, any of the Borrower's Liabilities, or any other guaranty of any of the Borrower's Liabilities (all such other agreements and instruments being collectively referred to as the "Related Agreements");

(b)   any action taken under any of the Related Agreements, any exercise of any right or power therein conferred, any failure or omission to enforce any right conferred thereby, or any waiver of any covenant or condition therein provided;

(c)   any acceleration of the maturity of any of the Borrower's Liabilities, of the Guarantor's Obligations, or of any other obligations or liabilities of any Person under any of the Related Agreements;

(d)   any release, exchange, non-perfection, lapse in perfection, disposal, deterioration in value, or impairment of any security for any of the Borrower's Liabilities, for any of the Guarantor's Obligations, or for any other obligations or liabilities of any Person under any of the Related Agreements;

(e)   any dissolution of the Borrower or any other party to a Related Agreement, or the combination or consolidation of the Borrower or any other party to a Related Agreement into or with another entity or any transfer or disposition of any assets of the Borrower or the Guarantor or any other party to a Related Agreement;

(f)   any extension (including without limitation extensions of time for payment), renewal, amendment, restructuring, or restatement of, any acceptance of late or partial payments under, or any change in the amount of, the Note or any other Related Agreement, in whole or in part;

(g)   the existence, addition, modification, termination, reduction, or impairment of value, or release of any other guaranty (or security therefor) of the Borrower's Liabilities (including without limitation the Guarantor's Obligations and obligations arising under any other guaranty now or hereafter in effect);

(h)   any waiver of, forbearance or indulgence under, or other consent to any change in or departure from any term or provision contained in the Note or any other Related Agreement, including without limitation any term pertaining to the payment or performance of (x) any of the Borrower's Liabilities, (y) any of the Guarantor's Obligations, or (z) any of the obligations or liabilities of any party to any other Related Agreement;

(i)   any other circumstance whatsoever (with or without notice to or knowledge of the Guarantor) which may or might in any manner or to any extent vary the risks of the Guarantor, or

2

might otherwise constitute a legal or equitable defense available to, or discharge of, a surety or a guarantor, including without limitation any right to require or claim that resort be had to the Borrower or to any collateral in respect of the Borrower's Liabilities or the Guarantor's Obligations, except by payment as herein provided.

It is the express purpose and intent of the parties hereto that this Guaranty Agreement and the Guarantor's Obligations hereunder shall be absolute and unconditional under any and all circumstances and shall not be discharged except by payment as herein provided.

4. **Currency and Funds of Payment.** All the Guarantor's Obligations will be paid in lawful currency of the United States of America and in immediately available funds, regardless of any law, regulation, or decree now or hereafter in effect that might in any manner affect the Borrower's Liabilities or the rights of the Secured Party with respect thereto as against the Borrower, or cause or permit to be invoked any alteration in the time, amount or manner of payment by the Borrower of any or all of the Borrower's Liabilities.

5. **Events of Default.** Without limiting the provisions of Section 2 hereof, in the event that there shall occur and be continuing an Event of Default (as defined below), then notwithstanding any collateral or other security or credit support for the Borrower's Liabilities, at the Secured Party's election and without notice thereof or demand therefor, the Guarantor's Obligations shall immediately be and become due and payable. The occurrence of any of the following events shall constitute an event of default (an "Event of Default"):

    (a) An Event of Default under Section 3(a) or Section 3(e) of the Note.

    (b) An Event of Default under Section 3(b), Section 3(c) or Section 3(d) of the Note, and the Holder thereof shall have accelerated the maturity of the Note as permitted under Section 4(a) of the Note.

6. **Maturity Date Extension.** The Secured Party agrees not to extend the time for final payment of the Note without the prior express written consent of the Guarantor.

7. **Suits.** The Guarantor from time to time shall pay to the Secured Party, on demand, at the Secured Party's place of business set forth in the Purchase Agreement or such other address as the Secured Party shall give notice of to the Guarantor, the Guarantor's Obligations as they become or are declared due in accordance with the terms of this Guaranty Agreement, and in the event such payment is not made forthwith, the Secured Party may proceed to suit against the Guarantor. At the Secured Party's election, one or more and successive or concurrent suits may be brought hereon by the Secured Party against the Guarantor, whether or not suit has been commenced against the Borrower, the Guarantor, or any other Person and whether or not the Secured Party has taken or failed to take any other action to collect all or any portion of the Borrower's Liabilities or has taken or failed to take any actions against any collateral securing payment or performance of all or any portion of the Borrower's Liabilities, and irrespective of any event, occurrence, or condition described in Section 3 hereof.

8. **Set-Off and Waiver.** The Guarantor waives any right to assert against the Secured Party as a defense, counterclaim, set-off, recoupment or cross claim in respect of the Guarantor's Obligations, any defense (legal or equitable) or other claim which the Guarantor may now or at any time hereafter have against the Borrower or the Secured Party without waiving any additional defenses, set-offs, counterclaims, or other claims otherwise available to the Guarantor.

9. Waiver of Notice; Subrogation.

(a) The Guarantor hereby waives to the extent permitted by law notice of the following events or occurrences: (i) acceptance of this Guaranty Agreement; (ii) the Secured Party's heretofore, now or from time to time hereafter giving or extending credit to or for the benefit of the Borrower, whether pursuant to the Purchase Agreement or the Note or any other Related Agreement or any amendments, modifications, or supplements thereto, or replacements or extensions thereof; (iii) presentment, demand, default, non-payment, partial payment, and protest; and (iv) any other event, condition, or occurrence described in Section 3 hereof. The Guarantor agrees that the Secured Party may heretofore, now or at any time hereafter do any or all of the foregoing in such manner, upon such terms and at such times as the Secured Party, in its sole and absolute discretion, deems advisable, without in any way or respect impairing, affecting, reducing, or releasing the Guarantor from its Guarantor's Obligations, and the Guarantor hereby consents to each and all of the foregoing events or occurrences.

(b) The Guarantor hereby agrees that payment or performance by the Guarantor of its Guarantor's Obligations under this Guaranty Agreement may be enforced by the Secured Party upon demand by the Secured Party to the Guarantor without the Secured Party being required, the Guarantor expressly waiving to the extent permitted by law any right it may have to require the Secured Party, to (i) prosecute collection or seek to enforce or resort to any remedies against the Borrower or any other guarantor of the Borrower's Liabilities, or (ii) seek to enforce or resort to any remedies with respect to any security interests, Liens, or encumbrances granted to the Secured Party or other party to a Related Agreement by the Borrower, or any other Person on account of the Borrower's Liabilities or any guaranty thereof.

(c) The Guarantor further agrees with respect to this Guaranty Agreement that the Guarantor shall have no right of subrogation, reimbursement, contribution or indemnity, nor any right of recourse to security for the Borrower's Liabilities unless and until ninety-three (93) days immediately following the "Termination Date" (being the date that the Note shall have been fully, finally and irrevocably paid and satisfied in full) shall have elapsed without the filing or commencement, by or against the Borrower or Guarantor, of any state or federal action, suit, petition, or proceeding seeking any reorganization, liquidation, or other relief or arrangement in respect of creditors of, or the appointment of a receiver, liquidator, trustee, or conservator in respect to, such Person or its or his assets. This waiver is expressly intended to prevent the existence of any claim in respect to such subrogation, reimbursement, contribution, or indemnity by the Guarantor against the estate of any other Borrower within the meaning of Section 101 of the Bankruptcy Code, in the event of a subsequent case involving any other Borrower. If an amount shall be paid to the Guarantor on account of such rights at any time prior to termination of this Guaranty Agreement in accordance with the provisions of Section 20 hereof, such amount shall be held in trust for the benefit of the Secured Party and shall forthwith be paid to the Secured Party, to be credited and applied upon the Guarantor's Obligations. The agreements in this subsection shall survive repayment of all of the Guarantor's Obligations, the termination or expiration of this Guaranty Agreement in any manner, including but not limited to termination in accordance with Section 20 hereof, and occurrence of the Termination Date.

10. Effectiveness; Enforceability. This Guaranty Agreement shall be effective as of the date first above written and shall continue in full force and effect until termination in accordance with Section 20 hereof. Any claim or claims that the Secured Party may at any time hereafter have against the Guarantor under this Guaranty Agreement may be asserted by the Secured Party by written notice directed to the Guarantor in accordance with Section 22 hereof.

11. Representations and Warranties. The Guarantor warrants and represents to the Secured Party that this Guaranty Agreement has been duly executed and delivered by the Guarantor. The

4

Guarantor warrants and represents to the Secured Party that the Guarantor's execution, delivery and performance of this Guaranty Agreement does not violate or constitute a breach of any agreement or instrument to which the Guarantor is a party, or any law, order, regulation, decree or award of any governmental authority or arbitral body to which the Guarantor or the Guarantor's properties or operations is subject; and that this Guaranty Agreement is legal, valid, binding, and enforceable against the Guarantor in accordance with its terms except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles.

12.  **Expenses.** The Guarantor agrees to be solely liable for the payment of all reasonable fees and expenses, including reasonable attorneys' fees, incurred by the Secured Party in connection with the enforcement of this Guaranty Agreement, whether or not suit be brought.

13.  **Reinstatement.** The Guarantor agrees that this Guaranty Agreement shall continue to be effective or be reinstated, as the case may be, at any time payment received by the Secured Party in respect of any Borrower's Liabilities is rescinded or must be restored for any reason, or is repaid by the Secured Party in whole or in part in good faith settlement of any pending or threatened avoidance claim.

14.  **Reliance.** The Guarantor represents and warrants to the Secured Party that: (a) the Guarantor has adequate means to obtain on a continuing basis (i) from the Borrower, material information concerning the Borrower and the Borrower's financial condition and affairs and (ii) from other reliable sources, such other information as the Guarantor deems material in deciding to provide this Guaranty Agreement ("Other Information"), and has full and complete access to the Borrower's books and records and to such Other Information; (b) the Guarantor is not relying on the Secured Party or its employees, directors, agents, or other representatives or Affiliates, to provide any such information, now or in the future; (c) the Guarantor has been furnished with and reviewed the terms of the Purchase Agreement, the Note and the other Related Documents, is executing this Guaranty Agreement freely and deliberately, and understands the obligations and financial risk undertaken by providing this Guaranty Agreement; (d) the Guarantor has relied solely on the Guarantor's own independent investigation, appraisal, and analysis of the Borrower, the Borrower's financial condition and affairs, the "Other Information," and such other matters as the Guarantor deems material in deciding to provide this Guaranty Agreement and is fully aware of the same; and (e) the Guarantor has not depended or relied on the Secured Party or its employees, directors, agents, or other representatives or Affiliates, for any information whatsoever concerning the Borrower or the Borrower's financial condition and affairs or any other matters material to the Guarantor's decision to provide this Guaranty Agreement, or for any counseling, guidance, or special consideration or any promise therefor with respect to such decision. The Guarantor agrees that the Secured Party has no duty or responsibility whatsoever, now or in the future, to provide to the Guarantor any information concerning the Borrower or the Borrower's financial condition and affairs, or any Other Information, other than as expressly provided herein, and that, if the Guarantor receives any such information from the Secured Party or its employees, directors, agents, or other representatives or Affiliates, the Guarantor will independently verify the information and will not rely on the Secured Party or its employees, directors, agents, or other representatives or Affiliates, with respect to such information.

15.  **Survival.** Subject to Section 20, all representations and warranties contained herein shall survive the delivery of documents and any extension of credit referred to herein or guaranteed hereby.

16.  **Entire Agreement.** This Guaranty Agreement, together with the Purchase Agreement, the Note, and the other Related Documents, constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior negotiations, agreements, understandings, inducements, commitments, or conditions, express or implied, oral or written, except as herein contained. The express terms hereof control and supersede any course of

5

performance or usage of the trade inconsistent with any of the terms hereof. Neither this Guaranty Agreement nor any portion or provision hereof may be changed, altered, modified, supplemented, discharged, canceled, terminated, or amended orally.

17. **Binding Agreement; Assignment.** This Guaranty Agreement and the terms, covenants, and conditions hereof, shall be binding upon and inure to the benefit of the parties hereto, and to their respective heirs, legal representatives, successors, and assigns; provided, however, that the Guarantor shall not be permitted to assign any of the Guarantor's rights, powers, duties, or obligations under this Guaranty Agreement or any other interest herein without the prior written consent of the Secured Party. All references herein to the Secured Party shall include any successor thereof.

18. **Severability.** The provisions of this Guaranty Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, such invalidity or unenforceability shall not affect the validity or enforceability of any other provision hereof, but this Guaranty Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

19. **Counterparts.** This Guaranty Agreement may be executed in any number of counterparts each of which when so executed and delivered shall be deemed an original, and it shall not be necessary in making proof of this Guaranty Agreement to produce or account for more than one such counterpart executed by the Guarantor.

20. **Termination.** Subject to Section 9(c) and to reinstatement pursuant to Section 13 hereof, this Guaranty Agreement, and all of the Guarantor's Obligations hereunder (excluding those Guarantor's Obligations relating to Borrower's Liabilities that expressly survive such termination) shall terminate on the Termination Date.

21. **Remedies Cumulative; Late Payments.** All remedies hereunder are cumulative and are not exclusive of any other rights and remedies of the Secured Party provided by law or under the Purchase Agreement, the Note, the Related Documents, or other applicable agreements or instruments. The extension of the financing evidenced by the Note shall be conclusively presumed to have been extended in reliance upon the Guarantor's guaranty of the Borrower's Liabilities pursuant to the terms hereof. Any amounts not paid when due under this Guaranty Agreement shall bear interest at the Default Rate.

22. **Notices.** Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be mailed by certified mail, return receipt requested, or by Federal Express, Express Mail or similar overnight delivery or courier service or delivered (in person or by telecopy, telex or similar telecommunications equipment) against receipt to the party to whom it is to be given, (i) if to the Guarantor, at his respective address as set forth below his signature, (ii) if to the Secured Party, at 3150 Holcomb Bridge Road, Suite 200, Norcross, GA 30071, or (iii) in either case, to such other address as the party shall have furnished in writing in accordance with the provisions of this Section 22. Any notice or other communication given by certified mail shall be deemed given at the time of certification thereof, except for a notice changing a party's address, which shall be deemed given at the time of receipt thereof. Any notice given by other means permitted by this Section 22 shall be deemed given at the time of receipt thereof.

23. **Governing Law; Venue; Waiver of Jury Trial.**

(a) THIS GUARANTY AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF GEORGIA APPLICABLE TO CONTRACTS EXECUTED, AND TO BE FULLY PERFORMED, IN SUCH

6

STATE.

(b) THE GUARANTOR HEREBY EXPRESSLY AND IRREVOCABLY AGREES AND CONSENTS THAT ANY SUIT, ACTION, OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREIN MAY BE BROUGHT IN THE COURTS OF THE STATE OF GEORGIA SITTING IN ATLANTA OR OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF SUCH STATE AND, BY THE EXECUTION AND DELIVERY OF THIS GUARANTY AGREEMENT, THE GUARANTOR EXPRESSLY WAIVES ANY OBJECTION THAT THE GUARANTOR MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE IN, OR TO THE EXERCISE OF JURISDICTION OVER THE GUARANTOR AND THE GUARANTOR'S PROPERTY BY, ANY SUCH COURT IN ANY SUCH SUIT, ACTION, OR PROCEEDING, AND THE GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUCH SUIT, ACTION, OR PROCEEDING.

(c) NOTHING CONTAINED IN SUBSECTION (b) HEREOF SHALL PRECLUDE THE SECURED PARTY FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY AGREEMENT IN THE COURTS OF ANY JURISDICTION WHERE THE GUARANTOR OR ANY OF THE GUARANTOR'S PROPERTY OR ASSETS MAY BE FOUND OR LOCATED. TO THE EXTENT PERMITTED BY THE APPLICABLE LAWS OF ANY SUCH JURISDICTION, THE GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT AND EXPRESSLY WAIVES, IN RESPECT OF ANY SUCH SUIT, ACTION, OR PROCEEDING, OBJECTION TO THE EXERCISE OF JURISDICTION OVER THE GUARANTOR AND THE GUARANTOR'S PROPERTY BY ANY SUCH OTHER COURT OR COURTS THAT NOW OR HEREAFTER MAY BE AVAILABLE UNDER APPLICABLE LAW.

(d) IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS OR REMEDIES UNDER OR RELATED TO THIS GUARANTY AGREEMENT OR ANY AMENDMENT, INSTRUMENT, DOCUMENT, OR AGREEMENT DELIVERED OR THAT MAY IN THE FUTURE BE DELIVERED IN CONNECTION THEREWITH, THE GUARANTOR AND THE SECURED PARTY HEREBY AGREE, TO THE EXTENT PERMITTED BY APPLICABLE LAW, THAT ANY SUCH ACTION, SUIT, OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY AND HEREBY IRREVOCABLY WAIVE, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT ANY SUCH PERSON MAY HAVE TO TRIAL BY JURY IN ANY SUCH ACTION, SUIT, OR PROCEEDING.

(e) THE GUARANTOR HEREBY EXPRESSLY WAIVES ANY OBJECTION THE GUARANTOR MAY HAVE THAT ANY COURT TO WHOSE JURISDICTION THE GUARANTOR HAS SUBMITTED PURSUANT TO THE TERMS HEREOF IS AN INCONVENIENT FORUM.

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this Guaranty Agreement as of the day and year first written above.

**GUARANTOR:**

_____
Signature
Name: _____
Address: _____
_____
_____

**SECURED PARTY:**

**INTERCEPT, INC.**

By: _____*[signature]*_____
Name: __Scott R. Meyerhoff__
Title: __Chief Financial Officer__

8

— Doc# 548638.03 —

FROM : SERVICIO DE FAX SLRC SONORA        PHONE NO. : 9165363388        Mar. 16 2004 09:20AM  P01

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this Guaranty Agreement as of the day and year first written above.

GUARANTOR:

Name: _Luis Enrique Molina_
Address: _____

SECURED PARTY:

INTERCEPT, INC.

By: _____
Name: _____
Title: _____

8